UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X

KINGVISION PAY-PER-VIEW LTD. as
Broadcast Licensee of the May 14,
2005 WRIGHT/TRINIDAD Program,

        REPORT AND
        RECOMMENDATION

             Plaintiff,

        CV 2006-2510 (FB)(MDG)

        - against -

JULIO VILLALOBOS, Individually, and
as officer, director, shareholder
and/or principal of TAQUERIA LA
MIXTECA REST. INC. d/b/a TAQUERIA LA
MIXTECA RESTAURANT, and TAQUERIA LA
MIXTECA REST. INC. d/b/a TAQUERIA LA
MIXTECA RESTAURANT,

             Defendants.

- - - - - - - - - - - - - - - - - - - X

Go, United States Magistrate Judge:

    Plaintiff Kingvision Pay-Per-View Ltd. ("plaintiff") brought

this action under Title 47 of the United States Code alleging

that defendant Julio Villalobos ("Villalobos"), individually, and

as an officer, director, shareholder and/or principal of Taqueria

La Mixteca Rest. Inc. and corporate defendant Taqueria La Mixteca

Rest. Inc. ("Taqueria") (collectively referred to as

"defendants") violated sections 553 and 605 by intercepting and

displaying to their customers, without plaintiff's authorization,

the Wright/Trinidad program held on May 14, 2005. Complaint

("Compl.") (ct. doc. 1) at ¶¶ 1, 15, 18, 19.

    The Honorable Frederic Block granted plaintiff's motion for

entry of default judgment following defendants' failure to appear or otherwise defend in this action and referred to me for report and recommendation the relief to be awarded.

PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the Complaint; the July 20, 2006 affidavit of Donna K. Westrich, Vice-President of plaintiff ("Westrich Aff.") (ct. doc. 5-4); the August 8, 2006 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 5-5); and the January 12, 2004 affidavit of investigator Thomas Larkin ("Larkin Aff.") (attached as Exhibit D to the Westrich Aff.)  Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Deerfield Beach, Florida.  Compl. at ¶ 5. Defendant Taqueria is alleged to be a New York corporation doing business as Taqueria Mixteca Restaurant (the "restaurant") at its principal place of business located at 4118 5th Avenue, Brooklyn, New York.  Id. at ¶¶ 10-11.  Defendant Villalobos resides in the State of New York.  Id. at ¶ 6.

Plaintiff owns the rights to distribute via closed-circuit television and encrypted satellite signal the Wright/Trinidad program and all undercard bouts and the entire television

-2-

broadcast scheduled for May 14, 2005 (the "program").  Id. at
¶ 15; Westrich Aff. at ¶ 3, Exh. A.  The program, which
originated via satellite uplink, was re-transmitted to cable
systems and satellite companies via satellite signal.  Compl. at
¶ 15.  Plaintiff entered into sublicense agreements with various
entities to exhibit the program to their patrons.  Id. at ¶ 16.

Defendants did not enter into any contract with plaintiff
and, thus, were not authorized to receive and publish the
program.  Westrich Aff. at ¶ 6.  As set forth in his affidavit,
investigator Thomas Larkin observed the unauthorized public
showing of the program by Taqueria to 20 customers.  Larkin Aff.
at 2.  Entering the establishment at approximately 11:25 p.m. on
May 14, 2005, investigator Larkin observed round 3 of the main
event between Wright and Trinadad.  Id. at 1.

Plaintiff served defendants on June 12, 2006, by personally
serving defendant Villalobos, as an individual and an officer of
the corporation.  Ct. docs. 3, 4.  Since the Federal Rules of
Civil Procedure permit personal service upon individuals and
personal service upon corporations by service upon an officer, I
find that service was properly effectuated upon all defendants.
See Fed. R. Civ. P. 4(e)(2), 4(h)(1).  Under New York law,
"service of a single document upon an officer of a corporation
constitutes service upon the corporation itself as well as upon
the individual officer, provided that there has been simultaneous
compliance with statutes governing both corporations and

individuals."  Georgiu v. Sterling Mounting & Finishing, 1 Fed.

Appx. 47, 49, 2001 U.S. App. LEXIS 523, at *4 (2d Cir. Jan. 9,

2001) (citing T.E.A. Marine Auto. Corp. v. Scaduto, 581 N.Y.S.2d

370, 181 A.D.2d 776 (2d Dep't 1992)); see also Hefland v. Cohen,

487 N.Y.S.2d 836, 110 A.D.2d 751 (2d Dep't 1985) (service on

individual defendant, who was also officer of corporation,

constituted effective service on both).

Following defendants' failure to answer the Complaint,

plaintiff filed a motion for judgment by default on August 8,

2006.  Ct. doc. 5.


DISCUSSION

I.   Legal Standards Governing Default

A default constitutes an admission of all well-pleaded

factual allegations in the complaint, except for those relating

to damages.  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty

Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v.

Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  A default also

effectively constitutes an admission that damages were

proximately caused by the defaulting party's conduct; that is,

the acts pleaded in a complaint violated the laws upon which a

claim is based and caused injuries as alleged.  Greyhound, 973

F.2d at 159.  The movant need prove "only that the compensation

sought relate to the damages that naturally flow from the

injuries pleaded."  Id.

The court must ensure that there is a reasonable basis for

the damages specified in a default judgment.  Actual damages or statutory damages may be assessed.  In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.  Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).  The moving party is entitled to all reasonable inferences from the evidence it offers.  Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II.  Determination of Damages

  A.  Liability

  Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming.  Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive ... or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his

own benefit or the benefit of another not entitled thereto."
When television programming is transmitted or intercepted over
both cable and satellite mediums, both sections 553 and 605
apply.  See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130
(2nd Cir. 1996) ("Sykes II") (noting that section 605 applies to
"the interception of cable-borne, as well as over-the-air, pay
television" where cable-borne transmissions originate as
satellite transmissions); see also Cmty. Television Sys., Inc. v.
Caruso, 284 F.3d 430, 435 (2d Cir. 2002).

Plaintiff's submissions establish that defendants violated
sections 553 and 605 of Title 47 by intercepting and receiving
the program without authorization.  Compl. at ¶¶ 18-19; Larkin
Aff. at 1-2.  Plaintiff had the right to distribute the program,
which originated via satellite uplink.  Compl. at ¶¶ 15-17;
Westrich Aff. at ¶ 3, Exh. A.  Investigator Larkin observed the
program being displayed at the restaurant, a business operated by
Taqueria, even though defendant had not contracted with plaintiff
to do so.  Larkin Aff. at 1-2.  Consequently, this Court finds
that defendant Taqueria's unlicensed reception and exhibition of
the transmissions violated sections 553 and 605 of Title 47.

However, the liability of Villalobos, the individual
defendant, involves different and additional considerations from
the liability of the corporate defendant Taqueria.  A party may
be vicariously liable for infringement if he has "the right and
ability to supervise" the infringing activities and had "an

obvious and direct financial interest in the exploitation of
[the] copyrighted materials" or contributorily liable if he
"authorized" the infringing conduct. See Softel, Inc. v. Dragon
Med. & Sci. Comm., Inc., 118 F.3d 955, 971 (2d Cir. 1997); Sygma
Photo News, Inc. v. High Soc'y Magazine, Inc., 778 F.2d 89, 92
(2d Cir. 1985) (persons "who participate in, exercise control
over or benefit from the infringement, are jointly and severally
liable as copyright infringers"); Gershwin Publ'g Corp. v.
Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971).
Plaintiff alleges in the Complaint that Villalobos was the
individual with supervisory capacity and control over the
activities occurring within the establishment on May 14, 2005,
and that Villalobos received financial benefit from the
operations of Taqueria.  Compl. at ¶¶ 8-9.  These allegations,
even though alleged upon information and belief, are deemed
admitted.  See Fong v. United States, 300 F.2d 400, 409 (9th Cir.
1962) (finding allegations on information and belief sufficient
to hold defendant individually liable on default judgment because
they stated facts primarily within defendant's knowledge); 71
C.J.S. Pleading § 82.  Moreover, plaintiff has submitted evidence
that Taqueria's liquor license lists Villalobos as a principal.
See Lonstein Aff. at p 5, Exh. B.  Finally, in serving Taquieria,
the process served served Villalobos at the restaurant and
identified Villallobos as an "officer" of the corporate
defendant.  Thus, I recommend that defendant Villalobos and the

corporate defendant be held jointly and severally liable for violating Title 47.

    B.   <u>Damages</u>

Plaintiff requests damages pursuant to section 605, rather than section 553. Pl. Mem. at 5-7. Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553. See <u>Sykes II</u>, 75 F.3d at 127; <u>Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc.</u>, No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages. <u>See</u> 47 U.S.C. § 605(e)(3)(C)(I). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). That section vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just." <u>See</u> <u>Home Box Office v. Champs of New Haven, Inc.</u>, 837 F. Supp. 480, 484 (D. Conn. 1993); <u>see</u> <u>also</u> <u>Joe Hand Promotions, Inc. v. Nekos</u>, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff"). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where

"the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain."  The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy.  See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history).  The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute.  See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover the maximum statutory damages allowed in the amount of $10,000 and enhanced damages up to $100,000 for each defendants' willful violation of section 605. Pl. Mem. at 5-7.  Some courts presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question.  See, e.g., Mama Zee, 2002 WL 2022522, at *3 (awarding $50 per patron), Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same).

Other courts have simply assessed a flat damages amount per

violation.  See Joe Hand Promotions, Inc. v. Hernandez, No. 03

Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004)

(awarding $1,000 statutory damages and $1,500 enhanced damages

for one-time exhibit of boxing match to about 20 customers);

Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S.

Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000

statutory damages and $5,000 enhanced damages for a one-time

exhibit of boxing match to 60 customers); Kingvision Pay-Per-

View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001)

(awarding $5,000 statutory damages for a one-time exhibit of

boxing match to 30 customers).

A number of judges in this district have awarded damages

based on the number of patrons or the capacity of an

establishment multiplied by the residential fee for a pay-per-

view broadcast.  See, e.g., Kingvision Pay-Per-View Ltd. v.

Cazares, No. CV-05-2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July

25, 2006) (adopting recommendation of statutory damages award

based on $54.95 residential rate for each patron present during

broadcast of event); Garden City Boxing Club, Inc. v. Rosado, No.

CV-05-1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005)

(recommending statutory damage award of $989.10 based on $54.95

for each of the 19 patrons observed in the establishment); Garden

City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062,

at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages

based on same $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Although plaintiff has not submitted any evidence as to the residential rate for this broadcast, the typical purchase price for a pay-per-view broadcast of this nature is $54.95. See Cazares, 2006 WL 2086031, at *3; Rosado, 2005 WL 3018704, at *3; Bello, 2005 WL 2496062, at *3.

Plaintiff has submitted evidence that 20 customers were present at the restaurant when investigator Larkin observed the program being illegally displayed. Larkin Aff. at 1-2. I recommend that damages be based on the number of customers in defendants' establishment. Thus, I recommend awarding damages for 20 customers at the $54.95 residential rate or $1,099.00.

Further, I recommend that the Court award enhanced damages against defendants. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350

(E.D.N.Y. Mar. 20, 1991)).  Since knowledge of infringement may
be "actual" or "constructive," it need not be proven directly and
can be inferred from the defendant's conduct.  See Knitwaves,
Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S.
Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir.
1992).  A defendant's default may also be considered as evidence
of willful infringement.  See Kenneth J. Lane, Inc. v. Heavenly
Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y.
March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03
Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004);
Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y.
2003).

Courts consider a variety of factors to determine whether a
defendant's willful conduct warrants enhanced damages.  These
factors include:  "repeated violations over an extended period of
time; substantial unlawful monetary gains; significant actual
damages to plaintiff; defendant's advertising for the intended
broadcast of the event; [and] defendant's charging a cover charge
or charging premiums for food and drinks."  Kingvision Pay-Per-
View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5
(S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in the Complaint
and the supporting affidavits clearly establish that Taqueria La
Mixteca Restaurant is a commercial establishment that publicly
displayed the Wright/Trinidad program to customers without

authorization.  Compl. at ¶¶ 15-19; Larkin Aff. at 1-2.

Plaintiff's submissions support the inference that on May 14,

2005, defendants displayed the program for commercial gain in

order to attract customers or retain customers who would

patronize defendants' restaurant.

Plaintiff has also submitted evidence that defendants

pirated at least one other event in addition to the program in

this matter.  On March 13, 2005, defendants pirated the

Morales/Paquaio broadcast from J&J Sports Productions, Inc.  See

Lonstein Aff. at ¶ 6, Exh. C (also filed in J&J Sports

Productions, Inc. v. Villalobos, No. 05 CV 6083 (E.D.N.Y.) as

ct. doc. 9-2, Exh. C).

Thus, I find that defendants willfully intercepted the

program without authorization and for commercial gain, and

recommend enhanced damages of $10,000 as a deterrent for future

violations.  See Rosado, 2005 WL 3018704, at *4 (awarding

enhanced damages of $10,000 with evidence of one additional

pirated program in a commercial establishment accommodating up to

35 patrons);  Kingvision Pay-Per-View, Ltd. v. Autar, 426 F.

Supp. 2d 59, 64 (E.D.N.Y. 2006) (awarding enhanced damages of

$10,000 with no evidence of additional pirating in a commercial

establishment with less then 20 patrons at the time of the

program); Kingvision Pay-Per-View, Ltd. v. Batista, No. 05 CV

0614, 2005 WL 2999427, at *4 (E.D.N.Y. Oct. 6, 2005) (awarding

enhanced damages of $20,000 with evidence of three additional

pirated programs in a commercial establishment accommodating up to 250 patrons).

     C.   <u>Attorneys' Fees</u>

Plaintiff seeks to recover its attorneys' fees and costs totaling $1,800.00. Compl. at ¶¶ 24, 30, 36; Lonstein Aff. at ¶ 3. Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party. <u>Int'l Cablevision, Inc. v. Sykes</u>, 997 F.2d 998, 1009 (2d Cir. 1993). The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 1940 (1983); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u>, 493 F.3d 110, 117-18 (2d Cir. 2007); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133 (2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the lodestar calculation. <u>See</u> <u>Hensley</u>, 461 U.S. at 434; <u>Lunday</u>, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise

unnecessary hours, as well as hours dedicated to severable unsuccessful claims." <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. <u>Chambless</u>, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. <u>See</u> <u>Arbor Hill</u>, 493 F.3d at 118. The prevailing rate in this district for this type of case is $200 per hour. <u>See</u>, <u>e.g.</u>, <u>J&J Sports Prods., Inc. v. Mendoza</u>, No. 06-CV-6846, 2008 WL 170199, at *10 (E.D.N.Y. Jan. 16, 2008); <u>J&J Sports Prods., Inc. v. Spar</u>, No. 06-CV-6101, 2008 WL 305038, at *4 (E.D.N.Y. Feb. 1, 2008).

Plaintiff seeks to recover $900.00 in attorneys' fees. Lonstein Aff. at ¶ 4. In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein detailing the

work done, hours expended, and the total amount due.  Id.  Ms.
Lonstein affirms that her firm expended a total of 3.75 hours at
a rate of $200 per hour, reflecting, inter alia, 1 hour of
factual research and development, 1 hour drafting the Complaint
and corporate disclosure and 1 hour drafting the Motion for
Default.  Id.  Ms. Lonstein also affirms 2 hours of paralegal
time at a rate of $75 per hour.  Id.  Although the rate sought by
plaintiff for attorney time may be reasonable, plaintiff fails to
provide any information identifying the attorneys who worked on
this matter and the experience of the attorneys.  If the work is
performed by an associate with only a few years of experience,
then I would find the $200 per hour rate unreasonable based on my
knowledge of prevailing rates for matters in this district.  See
LaBarbera v. ESL Home Remodeling Inc., No. 06-CV-1372, 2007 WL
708359, at *6 (E.D.N.Y. Feb. 28, 2007) (reducing associate's rate
to $150 per hour); King v. STL Consulting, LLC, No. 05 CV 2719,
2006 WL 3335115, at *7-*8 (E.D.N.Y. Oct. 3, 2006) (awarding $100
per hour for associate admitted in 2005); see also Googies
Luncheonette, Inc., 77 F. Supp. 2d at 491.  Because plaintiff
failed to provide sufficient information to support the rates
claimed, I recommend that plaintiff be awarded fees for its
attorneys' time at a rate of $175 per hour.  Otherwise, the total
number of hours are reasonable.  Accordingly, I recommend that
plaintiff be awarded $806.25 for attorneys' fees.

Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks

$900.00 in costs.  In support of that request, Ms. Lonstein's

affidavit attests to the payment of $350.00 to the investigator

for his services, $350.00 for filing fees, and $200.00 for

service of process fees, which I find to be mostly reasonable.

Lonstein Aff. at ¶ 3.

This Court agrees that plaintiff may be entitled to recover

costs incurred for the investigator since the investigation

clearly was "incidental and necessary" to the prosecution of this

case.  See Amato v. City of Saratoga Springs, 991 F. Supp. 62, 68

(N.D.N.Y. 1998) (citing Northcross v. Bd. of Educ., 611 F.2d 624,

639 (6th Cir. 1979)); see also Kingvision Pay-Per-View, Ltd. v.

Autar, 426 F. Supp. 2d 59, 65-67 (E.D.N.Y. 2006); Rolex Watch

U.S.A., Inc. v. Brown, No. 01 CIV. 9155, 2002 WL 1226863, at *4

(S.D.N.Y. June 5, 2002) (awarding investigative fees in trademark

infringement action); Int'l Cablevision, Inc. v. Noel, 982 F.

Supp. 904, 918 (W.D.N.Y. 1997) (acknowledging investigative fees

recoverable as a cost under § 605); Video Aided Instruction, Inc.

v. Y & S Express, Inc., No. 96 CV 518, 1996 WL 711513, at *6

(E.D.N.Y. Oct. 29, 1996) (awarding fees); Maywalt v. Parker &

Parsley Petroleum Co., 864 F. Supp. 1422, 1439 (S.D.N.Y. 1994)

(approving $75 rate for investigators as within "the reasonable

range of rates" paid in the district); but see Cazares, 2006 WL

2086031, at *6.

Investigator Larkin entered Taqueria La Mixteca Restaurant

at 11:25pm and left at 11:28pm.  Larkin Aff. at 1-2.  Larkin

later returned to Taqueria La Mixteca Restaurant on May 16, 2005 to take pictures outside the establishment at 10:55am.  Larkin Aff. at 2.  Based on this Court's knowledge from other cases and from conferring with colleagues, investigators hired by plaintiff (as well as other licensors of rights to certain programming broadcast via satellite) visit a number of places during the night that a particular boxing match is broadcast.  For example, plaintiff presented affidavits from investigator Thomas Larkin in three other cases in this district concerning the Wright/Trinidad program.  See 06 CV 2509; 06 CV 2511; and 06 CV 2512.  Plaintiff nonetheless also sought $350.00 for investigative fees in each one of these actions.  Although the investigator's invoice indicates that plaintiff was charged $350.00 for investigative fees, there is no evidence as to the investigator's hourly rate or how the amount charged was calculated.  Thus, I find the $350.00 in investigative fees sought by plaintiff to be excessive and recommend that this Court award only $100.00 in investigative costs.  The amount awarded of $100.00 is appropriate considering the investigative work required in this case.

Accordingly, I recommend that the Court award costs of $350.00 for the Court's filing fee, $200.00 for service of process fees, and $100.00 for investigative fees, for a total of $650.00 in costs.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that

-18-

this Court award plaintiff judgment against defendants Villalobos and Taqueria, jointly and severally, in the amount of $1,099.00 in statutory damages, $10,000.00 in enhanced damages, $806.25 in attorneys' fees and $650.00 in costs, for a total judgment of $12,555.25 against defendants.

This report and recommendation will be filed electronically and notice sent electronically and a copy sent by overnight delivery to the defendants on this date. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Frederic Block, on or before March 28, 2008. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72

**SO ORDERED.**

Dated:  Brooklyn, New York
        March 11, 2008

                                        /s/
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE